LAWRENCE J. JOHNSON, PLAINTIFF-APPELLANT, v. STATE
OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued March 7, 1955—Decided May 2, 1955.

424

*Mr. James G. Aiken* argued the cause for the appellant.

*Mr. Eugene T. Urbaniak,* Deputy Attorney-General, argued the cause for the respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General, attorney).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment of the Superior Court dismissing an application for *habeas corpus.* The application for the *habeas corpus* stemmed from the decision of this court in *State v. Monahan,* 15 *N. J.* 34 (1954). The appeal was certified here on our motion. *R. R.* 1 :10–1(*a*).

The appellant was born on April 29, 1929. He was indicted by the September term, 1943, grand jury of the Court of Oyer and Terminer of Camden County for the

murder of one Freeberger which occurred on October 1, 1943. The killing occurred during the perpetration of a robbery. *R. S.* 2:138–1, *N. J. S.* 2A:113–1; *R. S.* 2:138–2, *N. J. S.* 2A:113–2. At the time the appellant was 14½ years of age. On January 20, 1944 he pleaded "not guilty" to the indictment and counsel was assigned by the State to defend him. On May 17, 1944 he withdrew the plea "not guilty" and pleaded *"non vult"* and was sentenced by the Court of Oyer and Terminer to life imprisonment. He was received at the State Prison on May 19, 1944 and was transferred to the Reformatory at Rahway on a transfer order of the Commissioner of the Department of Institutions and Agencies pursuant to *R. S.* 30:4–85, and on July 12, 1948 by the same authority was re-transferred back to the State Prison where he has been and is now presently confined. It is stipulated in this case he was under the age of 16 years on the date the offense was committed and that he was 25 years of age on the date of the application for the writ. The court below after a full hearing dismissed the writ.

The trial court held: (1) the case of *State v. Monahan, supra,* did not apply to the application; (2) that the appellant's continued confinement was not a violation of due process since the judge who sentenced him in the Court of Oyer and Terminer was the same judge who would have sat in the Juvenile and Domestic Relations Court; and (3) the statute, *R. S.* 30:4–143, requires, in the case of a male convicted of murder, that he be confined to the State Prison and that the ultimate release of such a prisoner is an administrative act to be performed by the appropriate authorities with due consideration for the seriousness of the charge, the age of the defendant, his behavior and his adjustment to take his place in society.

At the time of the conviction of the appellant the Camden County Court of Oyer and Terminer was vested with jurisdiction to indict and try the appellant for the crime of murder. The Court of Errors and Appeals in the case of *In re Mei,* 122 *N. J. Eq.* 125 (*E. & A.* 1937), held that *R. S.* 2:103–3.1, now *N. J. S.* 2A:85–4, and *R. S.* 9:18–12

were unconstitutional insofar as they attempted to deprive the grand jury and the Court of Oyer and Terminer of jurisdiction to indict and try a person under the age of 16 for murder.

This was the law of this State until the decision of this court in *State v. Monahan, supra*. In this latter decision the prior decision of *In re Mei, supra*, was overruled and this court held that under the *parens patriae* doctrine both on psychological and sociological grounds the State and Legislature had the power to treat such a crime when committed by an infant under the age of 16 as juvenile delinquency and that jurisdiction was exclusive in the Juvenile and Domestic Relations Court. The question had come before this court on an appeal from a denial of a motion to transfer the proceedings from the Court of Oyer and Terminer to the Juvenile and Domestic Relations Court and the cause was so transferred on the remand.

The appellant contends that the decision in the *Monahan* case must be applied retrospectively and when so applied renders the sentence heretofore imposed upon him invalid, illegal and void for lack of jurisdiction of the subject matter and the person by the Camden County Court of Oyer and Terminer at the time the sentence was imposed. He further contends that the provisions of the Juvenile Act do not apply to him presently because the statute has no application to him as a prisoner at the age of 25 years because the statute is limited in its application to children and therein contemplates a person under the age of 21 years.

■■ The appellant relies principally upon the holding in *Stockton v. Dundee Mfg. Co.*, 22 *N. J. Eq.* 56 (*Ch.* 1871), where the court said:

"A change in the law, by decision, is retrospective, and makes the law at the time of the first decision as it is declared in the last decision, as to all transactions that can be reached by it."

This has been the law of this State and expresses the general prevailing view with respect to civil cases. It was re-declared in *Ross v. Board of Chosen Freeholders of Hudson*, 90 *N. J. L.* 522 (*E. & A.* 1917), which related to the employment of a

county jail guard and therefore involved a transaction which could be reached by the decision of the court. See also *Fox v. Snow*, 6 *N. J.* 12 (1950); *Arrow Builders Supply Corp. v. Hudson Terrace Apts., Inc.*, 16 *N. J.* 47 (1954).

It has been generally held that such retroactive operation and effect of a decision of a court of last resort in civil cases does not reach transactions where contract or property rights have vested or where extreme hardship would result. 14 *Am. Jur.*, p. 346; 47 *Harv. L. Rev.*, p. 1408; *Arrow Builders Supply Corp. v. Hudson Terrace Apts., Inc., supra.*

The rule in criminal cases, however, is different. In such causes the cases are in accord that an act pronounced innocent in a prior decision interpreting a statute or declaring a statute unconstitutional should not be rendered criminally punishable by a later overruling decision. 15 *C. J., sec.* 358, *p.* 961; 21 *C. J. S., Courts*, § 194; 47 *Harv. L. Rev., p.* 1408. But such is not the situation here. There is nothing innocent about the act for which the appellant is incarcerated, either at the time he committed it or by virtue of our decision in *State v. Monahan, supra.*

The defendant-appellant by his plea of *"non vult"* entered in the Camden County Court of Oyer and Terminer under the law applicable at the time it was entered, not only impliedly admitted his guilt of the crime of murder, *State v. Pometti*, 12 *N. J.* 446, 452 (1953), but likewise admits that the killing was unjustifiable. The appellant has committed an offense against the State of New Jersey and its citizens, a heinous offense which under the law at the time it was committed and he was tried, was the crime of murder. He was indicted for the crime of murder, was accorded the full due process he was entitled to under the constitutional guarantees, and by his plea of *"non vult"* impliedly admitted his guilt of the offense.

The decision in *State v. Monahan, supra*, does not and could not wipe out a responsibility and culpability for the offense he committed. It merely holds that under the Juvenile and Domestic Relations Court Act the appellant, since he was a child as defined in that act, at the time his

offense was committed, could not be charged with murder, tried and sentenced for that crime.

And this is so because the Criminal Procedure Act, *N. J. S. 2A* :85–4; *R. S. 2* :103–3.1, *L.* 1935, *c.* 285, states : "A person under the age of 16 is deemed incapable of committing a crime." The effect of this statute is that a child under the age of 16 must be apprehended and charged with "juvenile delinquency," an offense against the State as defined in *R. S.* 9 :18–12, *N. J. S. 2A* :4–14.

The commission of the offense imposes upon the State the authority to deprive such a child of his liberty. Where the proofs indicate that he has committed such an offense he immediately becomes subject to the *parens patriae* jurisdiction of the State. These statutory provisions as to "juvenile delinquency" have been constitutionally extended on this theory and authorize such deprivation of liberty and continued custody by the State. *Ex parte Newkosky,* 94 *N. J. L.* 314, 316 (*Sup. Ct.* 1920) ; *State v. Goldberg,* 124 *N. J. L.* 272 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 501 (*E. & A.* 1940) ; *State v. Monahan, supra.*

This *parens patriae* jurisdiction is a right of sovereignty and imposes a duty on the sovereignty to protect the public interest and to protect such persons with disabilities who have no rightful protector. This power has become familiar in its exercise by the Court of Chancery and its successor courts, but such exercise is merely a phase of the power and is usually limited to civil matters relating to contract and property rights of infants and incompetents and other persons under disability and the supervision of the personal custody of infants where necessary.

But the power and duty imposed by the *parens patriae* doctrine is much broader and extends to the personal liberty of persons who are under a disability whether by reason of infancy, incompetency, habitual drunkenness, imbecility, etc. Its exercise can be spelled out of the many statutory provisions relating to the settlement, incarceration, care and support of such persons by the State. This jurisdiction and duty is called into play when it is found that such persons

could be a danger to themselves or to the public if they were not taken and held under the protective custody of the sovereign. 46 *C. J., p.* 1212; 67 *C. J. S., Parens Patriae; Borawick v. Barba,* 7 *N. J.* 393, 410 (1951); *N. J. S.* 2A :4–2, *R. S.* 9 :18–2.

The statute, by providing that a person under the age of 16 is deemed incapable of committing a crime, does not ignore the offense but merely has the effect of stating a child under that age cannot commit a crime, but it does have the effect of placing such a child under a legal disability and subjects his liberty to the *parens patriae* jurisdiction of the State. It is the fact that the child committed the offense that is determinative of this restraint of liberty in aid of his rehabilitation through reformation and education. The restraint under the *parens patriae* doctrine is for curative rather than punitive purposes. *In re Lewis,* 11 *N. J.* 217, 224 (1953).

The plea of *"non vult"* entered by this appellant in the Camden Oyer and Terminer Court on May 17, 1944 established the fact that he had committed an unjustifiable homicide which called into play the *parens patriae* jurisdiction. Therefore, it would seem to follow that the decision in the *Monahan* case has retroactive effect only to the extent of rendering void his conviction of the crime of murder and the sentence imposed upon him for such crime as a matter of law. The effect of the decision in that case is that from the moment that plea was entered the appellant became subject to the *parens patriae* jurisdiction as set forth in the applicable statutes.

The appellant now urges that the Juvenile and Domestic Relations Court Act "is designed to apply to minors and the term 'child' must be read in its ordinary meaning as used in this statute and the entire Juvenile Court Act, and such term cannot be extended to include a person of the age of 25 years."

The principle that an infant on reaching the age of 21 becomes a *sui generis* person and therefore no longer a child does not automatically apply to persons who are under a natural disability such as an incompetent, imbecile or

habitual drunkard, and therefore subject to the *parens patriae* jurisdiction, and it likewise does not apply to a child who is under a statutory disability. The appellant by the statute is a "juvenile delinquent" and is therefore a ward of the State subject to the jurisdiction of the Juvenile and Domestic Relations Court. This disability is spelled out in *N. J. S. 2A*:4–14, *R. S.* 9:18–12 as amended.

By the decision in the *Monahan* case the Juvenile and Domestic Relations Court has acquired jurisdiction over the appellant even though he is past the age fixed by the statute of 18. *N. J. S. 2A*:4–17, *inter alia,* provides:

"In any case wherein the court shall have acquired jurisdiction of a *child*, such *child* may be committed to any institution to which he or she might have been committed by such court, notwithstanding such *child* shall have attained the age of 18 years after such court shall have acquired jurisdiction over such *child*." (Italics supplied.)

The phrase "such child" does not refer to just any child but must be read in the context in which it is used in the statute, and that is a child who has committed the offense of juvenile delinquency as defined in *N. J. S. 2A*:4–14, and such a child is under a disability.

Age is a factor in the court's jurisdiction as of the time the unlawful act was committed. *R. S.* 9:18–16, *N. J. S. 2A*:4–20; *R. S.* 9:18–13, *N. J. S. 2A*:4–17.

Between the ages of 16 and 18 where an offense of a heinous nature has been committed which may require the imposition of a sentence the cause may be transferred back to the County Court, or any juvenile of the age of 16 and 17 may demand a presentment and trial by jury and the case is likewise transferred to the County Court. When this is done a sentence is imposed "rather than the disposition permitted by this chapter for the welfare of society." *N. J. S. 2A*:4–15. But where the proceeding continues in the Juvenile and Domestic Relations Court and that court retains jurisdiction, the disposition of the offender is in accordance with the provisions of *N. J. S. 2A*:4–37 which permits, *inter alia,* the commitment of the child to "(2) * * * to any other like institution, commitment to which may be author-

ized by law." This means the choice of the institution is determined by the age of the child at the time of commitment. Such institutions are Annandale Reformatory, *R. S.* 30 :4–150 *et seq.*; New Jersey State Reformatory for Women, *R. S.* 30 :4–153 ; State Home for Boys, *R. S.* 30 :4–156, *R. S.* 30 :4–157.1; State Home for Girls, *R. S.* 30 :4–157; New Jersey Reformatory, *R. S.* 30 :4–146, which have statutory age limits of admission among other conditions.

But when commitment is made according to the age requirements of such institution it is subject to the provisions of the Juvenile and Domsetic Relations Act, *N. J. S.* 2*A* :4–33, which is *in pari materia.* A child between the ages of 16 and 18 must be so confined that he cannot have contact with any adult convicted of crime or under arrest.

Similarly, in view of our decision in the *Monahan* case, *R. S.* 30 :4–143 and *R. S.* 30 :4–157.1 must be construed and interpreted on the basis that a child, who commits an unjustified homicide, is not guilty of the crime of murder but of "juvenile delinquency," and should not be sent to the State Prison at Trenton.

Since we have held here that the conviction of the appellant for murder and the sentence to life imprisonment is void, *R. S.* 30 :4–123.11 relating to the parole of prisoners serving a sentence of life is not applicable. The ultimate discharge of the appellant from custody will depend on the action taken by the board of managers of the correctional institution in which he is detained at the time he initiates the application. *R. S.* 30 :4–113 ; *Ex parte Newkosky, supra.*

Since he could not have been and is not confined to the State Home for Boys, *R. S.* 30 :4–157.6 is not applicable in his case.

The judgment of the Superior Court, Law Division, dismissing the appellant's writ of *habeas corpus* is affirmed but the cause is remanded to the Camden County Juvenile and Domestic Relations Court for the purpose of retaining jurisdiction pending action by the board of managers where his application for discharge may be made.

No costs.

HEHER, J. (concurring in affirmance). For the reasons stated in the concurring opinion in *State v. Monahan,* 15 *N. J.* 34 (1954), I hold the view that the appellant is not restrained of his liberty under the judgment of conviction of a court of competent jurisdiction; and on that ground I would affirm the judgment dismissing the petition for a writ of *habeas corpus.*

On that hypothesis, the then Juvenile Court Act, *R. S.* 1937, 9 :18–1 *et seq.,* was not effective to deprive the old Court of Oyer and Terminer of jurisdiction of the criminal offense charged in the indictment under which the sentence of imprisonment was imposed; and the later substantive legislative changes in the Juvenile Act, serving to supply the constitutional deficiencies, would not on well-settled principles arrest the execution of the sentence.

HEHER, J., concurs in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice WACHENFELD—1.