**Application of Lawrence J. JOHNSON, also known as Lawrence Johnson, Jr., also known as Lawrence Albert Johnson, for a Writ of Habeas Corpus.**

**Civ. A. No. 590.**

United States District Court
D. New Jersey.

May 8, 1957.

James G. Aiken, Camden, N. J., for petitioner.

Eugene T. Urbaniak, Deputy Atty. Gen., for respondent.

FORMAN, Chief Judge.

This matter arises on an order to show cause obtained by the petitioner, Lawrence J. Johnson, also known as Lawrence Johnson, Jr., and as Lawrence Albert Johnson, on the respondent, William Lagay, Principal Keeper of the New Jersey State Prison Farm at Rahway, New Jersey, why a writ of habeas corpus should not issue in accordance with his petition filed herein.

The petitioner, Johnson, has been confined by New Jersey authorities since 1944, when, at the age of 15 years, he was sentenced to life imprisonment.

The background of the law against which the petition is filed begins with the case of In re Mei, 122 N.J.Eq. 125, 192 A. 80, 110 A.L.R. 1080, decided in 1937 by the former Court of Errors and Appeals. Therein a boy of 15 years was charged with murder in the Hudson County Court of Oyer and Terminer. It was contended in his behalf that he could commit no crime and that the Court of Oyer and Terminer was without jurisdiction over him by reason of the enactment of New Jersey Juvenile Delinquency Statutes, Chapters 284 and 285 P.L. 1935 N.J.R.S. 9:18-12 (now N.J.S.A. 2A:4-14). By virtue of this statutory protection, a person under 16 was deemed incapable of committing a crime and could have been held only as a juvenile delinquent even if he were found to have performed an act which, when committed by an adult, would have been

a crime. And jurisdiction over juvenile delinquency, by statute, was given to the Juvenile and Domestic Relations Court. However, the court in the Mei case held that, insofar as it applied to those under 16 charged with murder, the Juvenile Delinquency Act was unconstitutional, and determined that the Court of Oyer and Terminer had jurisdiction over the indictment and trial of such persons under 16 years. It concluded that the crime of murder was of such heinous character as to be excepted from the juvenile delinquency statutes and affirmed the conviction and sentence of Mei.

On March 21, 1954, the New Jersey Supreme Court overruled the Mei case in State v. Monahan, 15 N.J. 34, 104 A.2d 21, 48 A.L.R.2d 641. In the latter case, a 15 year old boy had been charged as an accomplice with his father to a felony murder. A motion was made on his behalf to transfer the proceedings from the Union County Court to the Juvenile and Domestic Relations Court of Union County on the ground that under N.J.S.A. 2A:85–4 [1] and N.J.S.A. 2A:4–14 [2] jurisdiction was exclusively in the Juvenile Court. The motion was denied and an appeal was taken. The New Jersey Supreme Court in recognition of modern sociological views oriented toward the rehabilitation rather than the punishment of juvenile offenders, held that

"* * * [O]ur present legislation lawfully vests exclusive jurisdiction in the juvenile court over misconduct by children under 16, including misconduct which would constitute murder or other heinous crime if committed by an adult * * *." 15 N.J. at page 46, 104 A.2d at page 27.

On October 1, 1943, at the age of 14, petitioner Johnson participated in a robbery in the course of which a man was killed. On January 20, 1944, he pleaded not guilty to an indictment for murder returned by the September 1943 Term Grand Jury of the Court of Oyer and Terminer of Camden County, New Jersey. On May 17, 1944, petitioner changed his plea to non vult and was sentenced that same day by the Court of Oyer and Terminer of Camden County to life imprisonment at hard labor. He was re-

1. "A person under the age of 16 years is deemed incapable of committing a crime." N.J.S.A. 2A:85–4.

2. "Except as stated in section 2A:4–15 of this title, the juvenile and domestic relations court shall have exclusive jurisdiction to hear and determine all cases of juvenile delinquency.

"Juvenile delinquency is hereby defined as the commission by a child under 18 years of age

"(1) of any act which when committed by a person of the age of 18 years or over would constitute:

"a. A felony, high misdemeanor, misdemeanor, or other offense, or

"b. The violation of any penal law or municipal ordinance, or

"c. Any act or offense for which he could be prosecuted in the method partaking of the nature of a criminal action or proceeding, or

"d. Being a disorderly person, or (2) of the following acts:

"e. Habitual vagrancy, or

"f. Incorrigibility, or

"g. Immorality, or

"h. Knowingly associating with thieves or vicious or immoral persons, or

"i. Growing up in idleness or delinquency, or

"j. Knowingly visiting gambling places, or patronizing other places or establishments, his admission to which constitutes a violation of law, or

"k. Idly roaming the streets at night, or

"l. Habitual truancy from school, or

"m. Deportment endangering the morals, health or general welfare of said child.

"But the commission of an act which constitutes a violation of the provisions of chapters 3 or 4 of Title 39, Motor Vehicles, of the Revised Statutes, or of any amendment or supplement thereof, by a child of or over the age of 17 years, who is the holder of a valid license to operate a motor vehicle under the laws of this or any other state, shall not constitute juvenile delinquency as defined in this section." N.J.S.A. 2A:4–14.

Note: N.J.S.A. 2A:4–15 concerns manner of dealing with offenses committed by persons who are 16 and 17 years of age.

ceived at Trenton State Prison on May 19, 1944; later transferred to the Rahway Reformatory; and on July 12, 1948, transferred again to the Trenton State Prison. Following the pronouncement on March 22, 1954, of the decision in the Monahan case, and deeming himself in identical status with Monahan, Johnson applied to the Superior Court of New Jersey, Law Division, for a writ of habeas corpus, alleging violation of his rights under the 14th Amendment of the Federal Constitution. His application was denied on June 22, 1954. In re Johnson Law Div.1954, 31 N.J.Super. 382, 106 A.2d 560. On appeal from that decision the New Jersey Supreme Court, on May 2, 1955, in Johnson v. State, 18 N.J. 422, 114 A.2d 1, 7 held:

(1) that denial of the petition for writ of habeas corpus should be affirmed;

(2) that the 1944 conviction and sentence was void on the ground that no child under 16 is capable of committing *any* crime;

(3) that the original charge should have been "juvenile delinquency";

(4) that the matter should be remanded to the Camden County Juvenile and Domestic Relations Court for proper action in accord with its (the Supreme Court's) decision; and

(5) that the jurisdiction should be retained by Camden County Juvenile and Domestic Relations Court "pending action by the board of managers where his application for discharge may be made." On the same day the Supreme Court en-

tered its mandate implementing its opinion.

A rehearing was denied by the New Jersey Supreme Court on May 31, 1955 and on January 9, 1956, the United States Supreme Court denied certiorari, Johnson v. State, 350 U.S. 942, 76 S.Ct. 318, 100 L.Ed. 822.

No action was taken under the mandate of the New Jersey Supreme Court until September 27, 1956, and Johnson's confinement was continued, except that he was transferred from the New Jersey State Prison at Trenton to the New Jersey State Prison Farm at Rahway. On July 23, 1956, Johnson petitioned this court for a writ of habeas corpus. He reiterated his assertion of the denial of his rights under the Federal Constitution.

An order was entered to show cause why the writ of habeas corpus should not be issued, pursuant to which a hearing was held on August 13, 1956, in which the petitioner was represented by counsel and the respondent was represented by a Deputy Attorney General of New Jersey.

Following an intimation that the petitioner's release might be imminent as a result of administrative procedure, decision was reserved. On September 27, 1956, during its pendency, the petitioner was presented by the Prosecutor of Camden County at the bar of the Juvenile and Domestic Relations Court of that county, pursuant to the mandate of the New Jersey Supreme Court of May 2, 1955; whereupon the court made the following order:

"Present:
Benjamin J. Dzick } Esquire, Judge of the Camden County Juvenile and Domestic Relations Court

---

Re: Lawrence Johnson
"It appearing that the sentence heretofore imposed upon Lawrence J. Johnson should be vacated; as set forth in Johnson v. State 18 N.J.

422 [114 A.2d 1]; and pursuant to said opinion and the Statutes of the State of New Jersey in such case made and provided the said Lawrence J. Johnson as a Juvenile Delin-

quent is hereby committed to the New Jersey Reformatory at Bordentown, New Jersey for an indefinite term."

In accordance with the foregoing order petitioner was lodged in the New Jersey Reformatory at Bordentown. The Board of Managers of that institution has authority to parole inmates.[3] Petitioner applied for such release and has been refused.

Respondent herein claims that petitioner should be denied the writ because of failure to have exhausted state court remedies as required by 28 U.S.C. § 2254,[4] or in the alternative, that this court can at most order further proceedings in the Juvenile Court; and, moreover, that due process does not apply to a juvenile.

It was asserted by the respondent that the New Jersey Supreme Court had remanded the petitioner's case to the juvenile and Domestic Relations Court of Camden County where the Supreme Court found that jurisdiction over him had always been lodged and that under Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572, he was required to take "proceedings" either in that court or in some other court of the State. Absent such, it was argued, his application here was premature. In the light of the foregoing recitation of petitioner's pursuit of relief in the State courts, the assertion that there has been a failure to exhaust remedies available therein is at best unrealistic.

In Wade v. Mayo, 1948, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647 the Supreme Court held that the exhaustion of one of several available alternative state remedies is all that is necessary to meet the requirements of Ex parte Hawk, supra; United States ex rel. Master v. Baldi, 3 Cir., 1952, 198 F.2d 113; and in Brown v. Allen, 1953, 344 U.S. 443, 449, 73 S.Ct. 397, 403, 97 L.Ed. 469, the Court construed 28 U.S.C. § 2254 in the following manner:

"We do not believe Congress intended to require repetitious applications to state courts."

Further, any expectation of a lower state court granting a writ, in the face of a decision by the state's highest court to the contrary is purely illusory. In this connection, it was said in United States ex rel. Almeida v. Baldi, 3 Cir., 1952, 195 F.2d 815, 824, 33 A.L.R.2d 1407:

"A refusal of habeas corpus is not res judicata, but we are nonetheless of the opinion that no lower Pennsylvania Court could be reasonably expected, in view of the action of the Supreme Court of Pennsylvania and of the Supreme Court of the United States, to grant the writ to Almeida * * *. We conclude, therefore, that Almeida has exhausted his remedies in the Courts of Pennsylvania, that there is an absence of available State corrective process, or that circumstances exist rendering such process ineffective to protect Almeida's rights."

3. "The several boards of managers of state correctional institutions, except the state prison, shall have power to release upon parole, such inmates of their respective institutions heretofore or hereafter committed as they may determine to be eligible therefor, subject to the provisions of section 30:4–106.2 of this title." N.J. S.A. 30:4–106.

4. "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it ap-

pears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254.

I cannot agree with respondent that the present petition is prematurely before this court or that further proceedings in the Juvenile Court would be fruitful.

██ Respondent's other contention —that due process does not apply to a juvenile—must surely have been intended to mean only that the rigor of certain judicial and correctional procedures ordinarily applied in cases of adult offenders, need not be applied in cases of juvenile offenders. It cannot mean that the constitutional protections of fundamental fairness are to be constricted. Any other interpretation would do offense to the very concept of liberalizing our criminal procedure in its operation on juveniles. Liberalizing criminal procedure is not intended to be, nor can it be allowed, at the expense of constitutional safeguards.

██ Although the proceedings in Juvenile Courts are universally recognized to be civil in nature, there is some contrariety of opinion as to the application of procedural safeguards normally guaranteed in the criminal courts. However, the trend in recent decisions is to hold that there shall be no greater diminution of the rights of a child, as safeguarded by the Constitution, than should be suffered by an adult charged with an offense equivalent to the alleged act of delinquency of the child.

Statutes concerning juveniles are devised to afford the juvenile protection "in addition to those he already possessed under the Federal Constitution. * * * The legislative intent was to enlarge, not to diminish those protections." In re Poff, D.D.C.1955, 135 F. Supp. 224, 225.

██ On the merits of this petition, this court of inferior jurisdiction in the federal system is brought into the position of reviewing a final decision of the court of last resort of the State of New Jersey, which decision the United States Supreme Court has not seen fit to disturb. Nothing less than reasons founded in conscientious belief that a curtailment of federal constitutional safeguards has occurred should inspire a difference of opinion here. In speaking of this situation in United States ex rel. Master v. Baldi, 3 Cir., 1952, 198 F.2d 113, 116, the Court of Appeals of this Circuit said:

"We reiterate that it is a highly uncomfortable position for judges of the district courts and courts of appeals, in effect, to review decisions of the highest court of a state. Nonetheless * * * although the decision of the state court is to be accorded great weight by a district court, the latter is obliged to pass upon the merits of the petition."

In its decision in Johnson v. State, supra, the New Jersey Supreme Court determined that, on the basis of Monahan, Johnson had been improperly convicted and sentenced by the Court of Oyer and Terminer of Camden County in 1944, presumably (the court did not expressly so state) because the latter was without jurisdiction to convict and sentence a child under the age of 16. However, the New Jersey Supreme Court regarded Johnson's non vult plea in the Court of Oyer and Terminer in the following light.

"The defendant-appellant by his plea of 'non vult' entered in the Camden County Court of Oyer and Terminer under the law applicable at the time it was entered, not only impliedly admitted his guilt of the crime of murder. State v. Pometti, 1953, 12 N.J. 446, 452, 97 A.2d 399 but likewise admits that the killing was unjustifiable. The appellant has committed an offense against the State of New Jersey and its citizens, a heinous offense which under the law at the time it was committed and he was tried, was the crime of murder. He was indicted for the crime of murder, was accorded the full due process he was entitled to under the constitutional guarantees, and by his plea of 'non vult' impliedly admitted his guilt of the offense.

"The decision in State v. Monahan, supra, does not and could not

wipe out a responsibility and culpability for the offense he committed. It merely holds that under the Juvenile and Domestic Relations Court Act the appellant, since he was a child as defined in that act, at the time his offense was committed, could not be charged with murder, tried and sentenced for that crime." Johnson v. State, supra, 18 N.J. at pages 429, 430, 114 A.2d at page 5 And, again, 18 N.J. on page 431, 114 A. 2d on page 6:

"The plea of '*non vult*' entered by this appellant in the Camden Oyer and Terminer Court on May 17, 1944 established the fact that he had committed an unjustifiable homicide which called into play the *parens patriae* jurisdiction. Therefore, it would seem to follow that the decision in the Monahan case has retroactive effect only to the extent of rendering void his conviction of the crime of murder and the sentence imposed upon him for such crime as a matter of law. The effect of the decision in that case is that from the moment that plea was entered the appellant became subject to the *parens patriae* jurisdiction as set forth in the applicable statutes."

It would seem from the foregoing statements that the court derived two separate but related effects, each with its own "legal" significance, from Johnson's plea of non vult. One was the retroactive conferring of at least partial jurisdiction upon a court which was, in the same opinion, inferentially held to have lacked jurisdiction because of the juvenile court's exclusive jurisdiction (of juvenile delinquents under 16 years); and secondly, the simultaneous introduction of the parens patriae doctrine, as justification for the continued confinement of Johnson in the custody of the state.

It must be noted, however, that although the Court of Oyer and Terminer exercised in 1944 what it thought to be proper jurisdiction by reason of the Mei decision of 1937, the Monahan case in 1954 resolved any question of jurisdiction over juveniles under the age of 16, in homicide cases, by restoring the exclusive jurisdiction in the Juvenile and Domestic Relations Courts originally conferred by statute. It therefore is difficult to reconcile the concept of jurisdiction conferred by virtue of a plea of non vult made in the Court of Oyer and Terminer with the import of the Monahan and Johnson opinions re-defining and re-emphasizing the exclusive jurisdictional role of the juvenile courts.

The New Jersey Supreme Court's observation that Johnson's plea of non vult in 1944 was an implied admission of guilt, and that the Monahan case "could not wipe out a responsibility and culpability for the offense he committed," though understandable, does not alter the fact that Monahan deprived the Court of Oyer and Terminer of *any* jurisdiction over Johnson. We are unable to agree that a plea before a court without jurisdiction can have any legal effect.[5]

However, it would seem from the Supreme Court's opinion that the real effect of the plea of non vult was to vest in the state a parens patriae jurisdiction, the exercise of which made Johnson's confinement legal. Although the parens patriae doctrine would more properly have taken effect at the very moment the juvenile was apprehended by the authorities, and is intended to benefit and protect both the juvenile delinquent and the public, the doctrine cannot serve as a justification for illegal detention, no matter how labelled. From the date when Monahan became controlling, Johnson has been under continuous confinement, though his conviction and sentence were void under the law of the State of New Jersey.

It is to be observed that Johnson was given neither notice nor hearing by the Camden County Juvenile and Do-

---

5. See Criminal Law and Procedure. Professor Knowlton, 10 Rutgers L.Rev. 97, 101 (1956).

mestic Relations Court, whose order committing Johnson to the Bordentown Reformatory was in the nature of a pro forma compliance with the mandate of the New Jersey Supreme Court. Nor was Johnson charged there with any act of juvenile delinquency. Therefore, it would appear that Johnson was not accorded due process in either the Court of Oyer and Terminer which had *no* jurisdiction over his person or the subject matter on which he was arraigned; nor was he accorded due process in the Juvenile Court, which afforded him neither notice nor hearing. The following language of the Supreme Court of the United States, in Cole v. Arkansas, 1948, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 is cogent:

"No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. * * * It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."

█ Although this applies to criminal proceedings, it is no answer to say that Johnson is not entitled to such constitutional protections because finally, at this late date, he has been considered to have committed only an act of juvenile delinquency—an act of a civil, not criminal, nature. As has been stated earlier, the liberalization of the criminal law to permit proceedings to determine acts of juvenile delinquency rather than acts of crime, was not designed to diminish the constitutional rights to fundamental fairness and justice.

█ The New Jersey Supreme Court also concludes that "the restraint

under the parens patriae doctrine is for curative rather than punitive purposes," Johnson v. State, supra, 18 N.J. at page 431, 114 A.2d at page 5 and that Johnson "by the statute is a 'juvenile delinquent' and is therefore a ward of the State subject to the jurisdiction of the Juvenile and Domestic Relations Court" (18 N.J. at page 432, 114 A.2d at page 5). And further:

"By the decision in the Monahan cases the Juvenile and Domestic Relations Court has acquired jurisdiction over the appellant even though he is past the age fixed by the statute of 18. N.J.S. 2A:4–17, N.J.S.A., *inter alia*, provides:

" 'In any case wherein the court shall have acquired jurisdiction of a *child*, such *child* may be committed to any institution to which he or she might have been committed by such court, notwithstanding such *child* shall have attained the age of 18 years after such court shall have acquired jurisdiction over such *child*.' (Italics supplied.)

"The phrase 'such child' does not refer to just any child but must be read in the context in which it is used in the statute, and that is a child who has committed the offense of juvenile delinquency as defined in N.J.S. 2A:4–14, N.J.S.A., and such a child is under a disability.

"Age is a factor in the court's jurisdiction as of the time the unlawful act was committed. R.S. 9:18–16, N.J.S. 2A:4–20, N.J.S.A.; R.S. 9:18–13, N.J.S. 2A:4–17, N.J.S.A."

This, however, can lead to strange results. Petitioner is now 28 years old. He has already been in continuous confinement for almost 13 years. Under the commitment for indefinite sentence by the Juvenile and Domestic Relations Court of Camden County in September, 1956, he can be confined as of this date for approximately an additional four and

a half years, as provided by N.J.S.A. 30:4–148.[6]

Although specific statutes refer to situations where the individual has passed his 18th birthday, the context in which one finds these references strongly negates any assumption that the "past 18" is to extend indefinitely beyond this age. The continued and repeated use of the words "child" and "children" [7] lends significant support for this construction. And N.J.S.A. 2A:4–2 specifically states that " * * * it is hereby declared to be a principle governing the law of this state that *children* under the jurisdiction of said court are wards of the state * * * " (Emphasis supplied.)

To state that "age is a factor in the (juvenile) court's jurisdiction as of the time the unlawful act was committed" is, of necessity, a truism. But does this mean that when an act of juvenile delinquency is committed by one under 16 (which act would have constituted the crime of murder, or other felony if committed by an adult), and the wrongdoer is ultimately apprehended when he is 40 years old, the Juvenile Court acquires jurisdiction over this person because of his age at the time of the original wrongdoing? I think not.

The very purpose of the Juvenile Act, as Justice Brennan (now Associate Justice of the United States Supreme Court)

6. N.J.S.A. 30:4–148.
"The courts in sentencing to the reformatory shall not fix or limit the duration of sentence, but the time which any such person shall serve in the reformatory or on parole *shall not in any case exceed five years* or the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, if such maximum be less than five years; *provided*, however, that the court, in its discretion, *for good cause shown*, may impose a sentence greater than five years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed. The term may be terminated by the board of managers in accordance with its rules and regulations formally adopted. As amended L.1951, c. 335, p. 1176, § 1." (Emphasis supplied.)
Parenthetically, it might be noted, it is conceivable that, "for good cause shown," one adjudged a juvenile delinquent might be confined by the Juvenile Court for the same period as his "older brother" by the criminal court—even "for life."

7. N.J.S.A. 2A:4–17.
"In any case wherein the juvenile and domestic relations court shall have acquired jurisdiction of a *child*, such jurisdiction may be retained during the continuance of the term for which such *child* shall have been committed, or if released by the court before the expiration of such commitment and placed on probation, or if placed on probation in the first instance, then such jurisdiction may be retained for the period of such probation, notwithstanding such *child* shall have at-

tained the age of 18 years during service of such commitment or the period of such probation.
"In any case wherein the court shall have acquired jurisdiction of a *child*, such *child* may be committed to any institution to which he or she might have been committed by such court, notwithstanding such *child* shall have attained the age of 18 years after such court shall have acquired jurisdiction over such child." (Emphasis supplied.)
N.J.S.A. 2A:4–20.
"If during the pendency of a criminal or quasi-criminal charge against any person in any other court, it shall be ascertained that such person was under the age of 18 years at the time of committing the offense, such court shall immediately transfer such case together with all the papers, documents and testimony connected therewith to the juvenile and domestic relations court having jurisdiction.
"The court making such transfer shall order the *child* to be taken forthwith to the place of detention designated by the juvenile and domestic relations court or to that court itself, unless the court making the transfer shall release the *child* in the custody of some suitable person to appear before the juvenile and domestic relations court at a time designated in the order.
"The juvenile and domestic relations court shall thereupon proceed to hear and dispose of the case in the same manner as if it had instituted in that court in the first instance."
See also Footnote 2, (N.J.S.A. 2A:4–14), for reference to a "child under 18".

pointed out in the case of In re Lewis, 1953, 11 N.J. 217, 224, 94 A.2d 328, 331, is that

> "the treatment of juvenile offenders is directed to their rehabilitation for useful citizenship through reformation and education and not to their punishment, even when the offense underlying the adjudication of juvenile delinquency is of a kind which when committed by an older person would merit indictment, conviction, and punishment." Also quoted in State v. Monahan, supra, 15 N.J. at page 40, 104 A.2d at page 24.

It is obvious that such a purpose is no longer applicable to one who is well beyond the age when he might reasonably be considered a juvenile.

The Juvenile Act can properly provide for jurisdiction by the Juvenile Court of those over 18 years, but the age relationship must be a reasonable one. A sound legislative objective cannot be stretched beyond its constitutionally valid purpose, even by judicial interpretation. Obviously, some legislative provision is needed to avoid the jurisdictional and constitutional pitfalls that can arise when applying the present state of the law to a juvenile grown into adulthood, especially when the pitfalls become increasingly deeper with the former juvenile's advancing years.

I am not prepared to state at what precise age the jurisdiction of the Juvenile Court can no longer be operative. I do maintain, however, that age 27 is beyond the reach of the Juvenile Court, jurisdictionally speaking, under the circumstances surrounding this case.

There comes a time at which the operation of the statute relative to juvenile delinquents ceases to be "curative" and becomes "punitive", and a point beyond which the statute can no longer reasonably be said to apply. Both situations seem to have coincided in this case.

Hence, I conclude that since no valid cause has been shown by the respondent why a writ of habeas corpus should not be issued as requested in the petition of Johnson, the writ shall issue. Further, when issued, the writ should be granted and petitioner discharged from custody. But the release of Johnson will be stayed for a period of forty days to give respondent time to take such proceedings as he may be advised. An order in conformity with this opinion should be submitted.