52 N.J. Super. 460 (1958)
145 A.2d 801
LORRAINE JOHNSON AND DICKIE HARRIS, PLAINTIFFS-RESPONDENTS,
v.
ARTHUR STOVEKEN, DEFENDANT-APPELLANT.
EUGENE MILES, PLAINTIFF-RESPONDENT,
v.
ARTHUR STOVEKEN, DEFENDANT-APPELLANT. ARTHUR STOVEKEN AND SIGMUND WISNIEWSKI, PLAINTIFFS-APPELLANTS,
v.
EUGENE MILES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1958.
Decided November 10, 1958.
*462 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Bernard Shurkin argued the cause for appellants Stoveken and Wisniewski (Messrs. Oppenheim and Oppenheim, attorneys).
Mr. Roland Vreeland argued the cause for respondents (Messrs. Dowd and Lombardino, attorneys for respondent Miles, and Messrs. Connolly, Vreeland and Connolly, attorneys for plaintiffs-respondents Johnson and Harris).
CONFORD, J.A.D.
These were cross-actions for damages arising out of an automobile accident, consolidated for trial. *463 Lorraine Johnson and Dickie Harris were passengers in an automobile being driven by Miles. Wisniewski was a passenger in a car being operated by Stoveken in the opposite direction on Route 206 between Princeton and Somerville. The cars collided at 1:45 A.M. on September 23, 1956. Johnson, Harris and Miles sued Stoveken, while Stoveken and Wisniewski sued Miles.
The jury returned verdicts in favor of Miss Johnson for $35,000, for Harris of $40,000, and for Miles of $300. No cause of action was found in the action of Stoveken and Wisniewski against Miles. A motion for new trial by Stoveken and Wisniewski, assigning as grounds that the verdict was against the weight of the evidence, and the result of partiality, prejudice or passion, and that the verdicts in favor of Harris and Johnson were excessive and contrary to the weight of the evidence, was denied. On this appeal, in addition to those grounds, there are also raised as points of appeal the references by trial counsel and court to the ad damnum clause in the complaints and alleged errors in rulings on evidence.
Concerning the weight of the evidence on the matter of fault, or liability for negligence, and the related question of freedom from contributory negligence of the respective drivers, we deem it unnecessary to detail the sharply conflicting proofs. While the jury might well have laid negligence at the doorstep of Miles, as either partially or solely contributive to the accident, rather than exclusively to Stoveken (as it is evident it did by the verdict for Miles against Stoveken), we cannot say that its right to determine the credibility and preponderance of the proofs could not rationally have led it to the assessments of negligence and innocence thereof which the verdicts reflect. The refusal of the trial judge to interfere with the verdict further conduces to our conclusion, Hartpence v. Grouleff, 15 N.J. 545 (1954), as we cannot find a "manifest denial of justice."
In relation to the matter of evidence concerning liability, defendant complains of the refusal of the trial court to allow him to ask, on cross-examination, for plaintiff *464 Johnson's explanation of a discrepancy between her testimony at a prior hearing and that given at the trial. It is not altogether clear that there actually was a discrepancy. In any case, however, the right to explain is that of the witness sought to be impeached. The cross-examiner's rights are fully served by showing the contradiction in the testimony and asking the witness concerning the truth of one or the other version. Defendant was not impeded in any such effort. In any event, there was no prejudice material to the outcome in the trial ruling.
Concerning the amount of the verdicts for Harris and Johnson, we do not deem them excessive, certainly not in the sense of requiring a conclusion of mistake, passion, prejudice or partiality. Miss Johnson, a young woman of 21, sustained almost a complete amputation of her nose. She had extensive surgery and will require considerably more. She will never be restored to any approximation of her former normal appearance. Her other painful and extensive lacerations and injuries and the treatment had therefor are accurately detailed in the trial judge's opinion denying a new trial.
Harris, who was 29, suffered a dislocation of the sixth cervical vertebra on the seventh cervical vertebra and probably an associated fracture. He was in the hospital a total of nine weeks on two occasions. He was first treated by traction and plaster cast. After removal of the cast it was found that the dislocation had recurred. Further traction was not helpful. Consequently, to avoid the great hazard, in the patient's then condition, of further dislocation which might impinge on the spinal cord and produce paralysis, an operation was performed consisting of a fusion of four vertebrae, including the two directly involved in the dislocation, using two pieces of bone from one of the legs, reinforced by wire. The effect was to rigidify the neck and minimize the possibility of further dislocation. However, the patient's neck motion was substantially reduced. The necessary effect, moreover, was to eliminate function in one-third of the vertebral joints in the cervical spine, so *465 that the other joints and vertebrae must bear more stress and strain than normal. The probabilities, therefore, are for earlier degenerative arthritis than generally occurs in the neck and spine. His ability to obtain gainful employment in his occupation as a laborer has been considerably impaired, because he tires rapidly. There continues to be considerable pain and discomfort when sitting, standing or lying down. The uncontradicted expert testimony was that plaintiff's physical changes due to the accident and operation are permanent.
Defendant finally urges reversal on the basis of the reference by trial counsel to the amounts of $100,000 requested in the ad damnum clauses of the complaint. There was no objection to the reference at the trial. In charging the jury the trial judge adverted to the reference, informed it of the nature of the complaint and of the ad damnum clause, and said, without any objection by any party:
"Now, the measure of a person's recovery in an action of this sort is not what the plaintiff's attorney has seen fit to demand in his complaint, but rather his measure of recovery is predicated on certain rules of law that are well established and these rules guide the Jury in their determination of the amount of the verdict. Not what the attorney for the respective plaintiffs demand. I shall give you those rules in the course of my charge. They are the facts that are to be used by you when you reach the element of damages and your determination, of course, is to be made entirely upon the application of those rules."
In Botta v. Brunner, 26 N.J. 82 (1958), decided after the trial of the instant case, the Supreme Court by dictum overruled a settled line of authority permitting reference by counsel to the amount sought in the complaint. The court determined that this practice should be prohibited because the figure mentioned might operate "as a conscious or unconscious factor" in the verdict reached by the jury, contrary to the rule that the determination from the evidence of the money equivalent of the pain, suffering and permanence of personal injuries was the exclusive domain of the jury (26 N.J. at pages 104, 105).
*466 Defendant argues that the Botta ruling must be given retrospective effect. He conceded at the argument, however, that the error is not an automatic basis for reversal, but, as in cases of trial error generally, will justify reversal only if found materially prejudicial in the particular case. He contends prejudice is shown here, reflected by the jury's assessment of liability against the weight of the evidence and of damages in excessive amounts. We have, however, indicated our disagreement with the contentions that the verdicts indicate passion, prejudice, partiality or mistake in either of the respects mentioned. Indeed, we do not regard them as excessive at all. Further, mention of the amount sued for would have little, if any, relevancy to the verdict as to liability. Thus, even if the Botta rule were applied here, we would not be led to the conclusion that counsel's mention of the amount of the recovery or the court's charge concerning the matter operated prejudicially in the particular circumstances reflected by the entire record. A fortiori we would not deem these occurrences plain error, warranting reversal in spite of the fact that no objection was taken to them at the trial.
In any event, however, considerations of basic fairness and justice (see Arrow Builders Supply Corp. v. Hudson Terrace Apts., 16 N.J. 47, 49, 50 (1954)) seem to us to weigh against the application of the Botta rule to nullify a trial conducted in accord with the practice then and long previously enjoying express judicial sanction. See also Carlucci v. Stichman, 50 N.J. Super. 96 (App. Div. 1958). It will be noted that in expressly overruling prior decisions approving mention of amounts sought to be recovered Mr. Justice Francis states, in Botta, that the court is doing so "In order that the rule announced in the present case may be invested with its full and intended scope * * *" (emphasis supplied) (26 N.J. at page 104). This language strongly implies that the court is announcing a rule to control cases tried after the decision, not one intended to be retrospective in effect.
Affirmed.
*467 HANEMAN, J.A.D. (dissenting).
I concur with my colleagues in their conclusions except insofar as they concern the reference by plaintiffs' counsel to the ad damnum clause. My dissent is as to their conclusion that such reference did not constitute reversible error.
As noted in the majority opinion, plaintiffs' counsel adverted in his summation to the fact that each plaintiff had demanded $100,000 as damages in the complaint.
The entire portion of the court's charge concerning the ad damnum clause reads:
"The Court: Members of the Jury, yesterday afternoon towards the close of summation of counsel, probably the opening of summation of counsel for the plaintiffs, Miss Johnson and Mr. Harris, he told you that the ad damnum clause, as it is called in these complaints seeks damages on each count in the amount of $100,000 respectively for Miss Johnson and Mr. Harris. Now, the complaint is the paper that lawyers file when they begin a suit of this sort. In form it was recited in more or less legal technical language the nature of the case alleged against the defendant and always concludes with what we call the ad damnum clause and it runs something like this, `Wherefore, the plaintiff claims damages in the amount of so much money.' The figure that is put in that ad damnum clause and in this case $100,000 in each count rests entirely with the attorney who brings the action.
Now, the measure of a person's recovery in an action of this sort is not what the plaintiff's attorney has seen fit to demand in his complaint, but rather his measure of recovery is predicated on certain rules of law that are well established and these rules guide the jury in their determination of the amount of the verdict. Not what the attorney for the respective plaintiffs demand. I shall give you those rules in the course of my charge. They are the facts that are to be used by you when you reach the element of damages and your determination of course, is to be made entirely upon the application of those rules."
The trial in this matter antedated the opinion in Botta v. Brunner, 26 N.J. 82 (1958), which is undoubtedly the reason that no objection was taken to either the summation or charge.
Defendants seek reversal under R.R. 1:5-3(c), which reads:
"The court may notice plain errors affecting substantial rights of a party, although they were not brought to the attention of the trial court."
*468 In Botta v. Brunner, supra, 26 N.J. at pages 103, 104, the court said:
"It may be said, and not without justification, that our conclusion conflicts to some degree with Rhodehouse v. Director General, 95 N.J.L. 355 (Sup. Ct. 1920); Balog v. F.M. Mitchell Motor Co., 3 N.J. Misc. 1000 (Sup. Ct. 1925), and Lukasiewicz v. Haddad, 24 N.J. Super. 399 (App. Div. 1953), which hold that it is not improper for counsel to advise the jury as to the amount of the ad damnum clause of the complaint; also with Kulodzej v. Lehigh Valley Railroad Co., 39 N.J. Super. 268 (App. Div. 1956), sanctioning a statement to the jury in summation of counsel's opinion as to the sum which should be awarded to the plaintiff; and with Budden v. Goldstein, supra, 43 N.J. Super. at page 344, approving reference to suggested amounts as reasonable compensation. In order that the rule announced in the present case may be invested with its full and intended scope, those decisions are expressly overruled. * * *
Informing the jury of the ad damnum clause serves no useful or sound function. If it be said that the amount claimed constitutes the maximum limit of permissible recovery, the legal effect of that limitation is better left in the control of an experienced trial court. In the hands of the jury, untrained in the trial of cases, it may very well raise confusing and difficult complications. It is a matter of common knowledge that ordinarily the amount of damages laid in the complaint is much in excess of any sum which the plaintiff hopes to receive. Witness the large number of actions which are being transferred regularly from our Superior Courts to the District Courts.
We know that as a matter of practice when the ad damnum clause is brought to the attention of the jury, the court admonishes them that it only represents the claim of the plaintiff and that their award must be based on reasonable compensation. But it is extremely doubtful whether such admonitions are sufficient to eliminate the figure from their minds as a conscious or unconscious factor in reaching their verdict. Hollinger v. York Rys. Co., supra [225 Pa. 419, 74 A. 344]. And as the Supreme Court of Missouri declared in Bales v. Kansas City Public Service Co., 328 Mo. 171, 40 S.W.2d 665, 670 (1931), `However, we are unable to see wherein it serves any good or useful purpose to inform the jury, in instructing them upon the measure of damages, that they cannot allow or assess the damages in excess of the amount sued for, and named in the instruction. We believe that the practice of giving such forms of instruction should be discontinued by the trial courts.' 40 S.W.2d at page 670. And see Otto v. Milwaukee Northern Ry. Co., 148 Wis. 54, 134 N.W. 157, 160 (Sup. Ct. 1912)."
Two questions are inferentially raised by this appeal, (1) whether the rule formulated in Botta is retrospective, *469 and (2) whether a reference to the amount of the ad damnum clause in the summation of plaintiffs' counsel automatically constitutes reversible error which cannot be cured by a directory charge.
It must be conceded that Botta inveighed against any reference to the amount demanded in the ad damnum clause. It must also be conceded that the rule concerning the disclosure of the amount demanded is dictum. However, the language in which that rule was announced is so strong as to lead to only one rational conclusion, i.e., sound public policy prohibits the practice and invests the defendant with an inviolable right to be protected against such disclosure.

I.
I shall treat of whether Botta is retrospectively effective.
Generally, a change in the law in a civil case by a decision of the highest court of the State is retrospective and makes the law at the time of the first decision as it is declared in the last decision, as to all transactions that can be reached by it. Stockton v. Dundee Manufacturing Co., 22 N.J. Eq. 56 (Ch. 1871). See also Ross v. Freeholders of Hudson, 90 N.J.L. 522 (1917); Fox v. Snow, 6 N.J. 12 (1950); Johnson v. State, 18 N.J. 422 (1955).
The retroactive operation and effect of such an overruling decision, however, does not reach transactions where contract or property rights have vested or where extreme hardship would result. Johnson v. State, supra.
This rule was subject to some implied criticism by dictum appearing in Arrow Builders Supply Corp. v. Hudson Terrace Apts., 16 N.J. 47 (1954). The Supreme Court, however, subsequently reaffirmed and restated that rule. Johnson v. State, supra.
In the matter sub judice the plaintiff has no vested property right which would be affected, since the holder of a judgment can have no vested right therein until the time for appeal has run. Shade v. Colgate, 3 N.J. 91 (1949); In re Pfizer's Estate, 6 N.J. 233 (1951); R.R. 1:2-1; 2:2-1.
*470 Nor does there appear to be extreme hardship in the sense in which that term is used. The question of the negligent causation of the accident was properly entrusted to the jury for solution. The sole issue on remand would be the quantum of damages, which would necessitate a retrial of that issue alone. That hardship is not such as should move the court to conclude that plaintiffs should be exempt from the general rule.
Thus plaintiffs' case does not fall within any of the exceptions to the general rule.
My colleagues have determined that the intent of the court in Botta was to interdict in futuro the practice of disclosing the amount demanded in the ad damnum clause. Such result, it is said, results from an implication contained in that decision. The portion of the opinion relied upon, when taken in context, demonstrates that the interdiction was against both the use of a chronometric formula and any reference to the amount demanded in the ad damnum clause. The court did not distinguish between the stated prohibitory acts either as to their effect upon the jury or as to the time when the rule should become effective. In neither instance did the court prospectively restrict the operative effect of the rule by apt and specific words, as was done in Great Northern R. Co. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and Hanks v. McDanell, 307 Ky. 243, 210 S.W.2d 784, 17 A.L.R.2d 1 (Ct. App. 1948).
In overruling prior decisions permitting reference to the ad damnum clause, the court in Botta used the present tense. The court, in that connection, said, 26 N.J. at p. 104:
"In order that the rule announced in the present case may be invested with its full and intended scope, those decisions are expressly overruled." (Emphasis supplied)
The language of the opinion can lead only to the conclusion that the old doctrine was immediately overruled and the new doctrine simultaneously adopted.
*471 There can be no doubt that in Botta the court could have exercised the power reposed in it in a manner which would have given prospective effect only to the rules announced therein.
In Griffin v. Illinois, supra (351 U.S. 26, 76 S.Ct. 594, 100 L.Ed. at page 903), the court said:
"It is much more conducive to law's self-respect to recognize candidly the considerations that give prospective content to a new pronouncement of law. That this is consonant with the spirit of our law and justified by those considerations of reason which should dominate the law, has been luminously expounded by Mr. Justice Cardozo, shortly before he came here and in an opinion which he wrote for the Court. See Address of Chief Judge Cardozo, 55 Report of New York State Bar Asso. 263, 294 et seq., and Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 363-366, 53 S.Ct. 145, 148-149, 77 L.Ed. 360, 365-367, 85 A.L.R. 254. Such a molding of law, by way of adjudication, is peculiarly applicable to the problem at hand. The rule of law announced this day should be delimited as indicated."
See also Great Northern R. Co. v. Sunburst Oil & Ref. Co., supra.
Absent express provision limiting the effect of an overruling decision to the future, the general rule governs, i.e., the decision has a retroactive effect. I conceive, therefore, that the decision in Botta has a retroactive effect and is binding on these litigants.

II.
It is necessary, next, to determine whether it is reversible error per se for plaintiffs' counsel in his summation to disclose to the jury the amount demanded in the ad damnum clause.
The expression of the reasoning in Botta which led the court to conclude that the employment of mathematical formulae to admeasure the compensation for pain and suffering, or any reference to the ad damnum clause, or the transmittal of the complaint, including the ad damnum clause, to the jury, "will constitute an unwarranted intrusion into the domain of the jury" (26 N.J. at page 103), is *472 couched in strong and indisputable terms. The vice in the prohibited conduct lies in its incalculable effect upon the jury and the well-nigh impossible task of purging such figures from the minds of the jury. The court said, concerning reference to the ad damnum clause (26 N.J. at p. 104):
"But it is extremely doubtful whether such admonitions are sufficient to eliminate the figure from their minds as a conscious or unconscious factor in reaching their verdicts." (Emphasis supplied)
The stated inability to eliminate from the minds of the jurors the amount of the ad damnum clause can give rise only to the conclusion that any such reference is deemed prejudicial per se.
The final conclusion in Botta is supported by numerous references to judicial decisions emanating from courts in Pennsylvania, by both citing and quoting from those decisions. In that state a reference to the ad damnum clause in the summation of plaintiff's counsel is considered automatically prejudicial and the granting of a motion for a mistrial based on that ground is mandatory.
One of the cases cited in Botta is Carothers v. Pittsburgh Rys. Co., 229 Pa. 558, 79 A. 134 (Sup. Ct. 1911). In that case the plaintiff's counsel made reference to the ad damnum clause in his summation. The trial court denied a motion for a mistrial but attempted to eradicate the comment from the jury's mind by its charge. The appellate court said (79 A. at page 135):
"In this case it is just to counsel, who was from another state, to say that the remark complained of was made in good faith, and without knowledge of our decisions on the subject, and to the learned trial judge that he did all in his power, by proper instructions, to correct the error complained of. It is better, however, that the rule should be fixed and that cases of this kind should be put in line with Holden v. Pennsylvania R.R. Co., 169 Pa. 1, 32 A. 103, Wagner v. Hazel Twp., 215 Pa. 219, 64 A. 405, Saxton v. Pittsburg Railways Co., 219 Pa. 492, 68 A. 1022, Hollis v. Glass Co., 220 Pa. 49, 69 A. 55, and kindred cases in which this court has taken a stand against every attempt to obtain an unfair advantage in the trial of a cause. The first assignment of error is sustained."
*473 Another case cited in Botta is Vaughan v. Magee, 218 F. 630 (3 Cir. 1914). In that case the court said, at page 631:
"Whatever may be the practice in other jurisdictions, the courts of Pennsylvania have been stern and unyielding in that regard. Wherever a court, in its charge, or counsel, in addressing a jury, have brought to a jury's notice that a plaintiff claimed a fixed sum for damages, it has been adjudged a mistrial. Carothers v. Pittsburgh Railways Co. 229 Pa. 560, 79 A. 134; Reese v. Hershey, 163 Pa. 253, 30 A. 907, 43 Am. St. Rep. 795; Quinn v. Philadelphia Rapid Transit Co., 224 Pa. 162, 73 A. 319; Dougherty v. Pittsburgh Railways Co., 213 Pa. 346, 62 A. 926; Hollinger v. York Railway Co., 225 Pa. 419, 74 A. 344, 17 Ann. Cas. 571. The bar of the state has loyally supported this view, and this seems a fitting case for this court to emphasize and restate, as applicable to the federal courts of this circuit, the ruling of those cases."
See also Stein v. Meyer, 150 F. Supp. 365 (D.C.E.D. Pa. 1957).
The gist of the holding in the two above cited cases is that defendant has a fundamental right against reference by plaintiff's counsel to the ad damnum clause.
Any reference by plaintiff, in his summation, to the amount demanded in the ad damnum clause is therefore prejudicial per se and hence reversible error. Such error affects a substantial and fundamental right and cannot be cured by a charge of the trial court. Cf. Wright v. Bernstein, 23 N.J. 284, 296 (1957).
I am appreciative of the fact that my conclusions may conflict with Carlucci v. Stichman, 50 N.J. Super. 96 (App. Div. 1958), in which decision I participated. In the matter sub judice it was conceded by counsel that the error was not an automatic ground for reversal. In Carlucci the question of whether a breach of the summation rule in Botta was an automatic ground for reversal was neither urged nor argued by counsel in their respective briefs, nor considered by the court. My further deliberations, however, convince me that there is so much merit to the above reasoning that it requires expression, because of its import upon cases not only ante Botta but post Botta as well.
*474 The adversion of plaintiffs' counsel to the amount demanded in the ad damnum clause therefore constitutes plain error and affects the substantial rights of defendant. It becomes not only unnecessary but improper as well to examine the amount of the verdict to ascertain whether substantial rights were violated as evidenced by an excessive award.
I would therefore reverse and remand for a new trial as to damages only.